UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

BRYAN DUNCAN, ROBERT LOCUST,
AND RYAN RAINFORD,

                 Defendants.

S1: 18-Cr-289 (SHS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/22/19

SIDNEY H. STEIN, U.S. District Judge.

Defendants Bryan Duncan, Robert Locust, and Ryan Rainford are charged in a six-count superseding indictment with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349; substantive counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2; and substantive counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. Trial began on May 7, 2019 and continues.

Now before the Court is a motion filed by the government on May 13, 2019. (Doc. 137.) In it the government asks the Court to preclude defendant Robert Locust from eliciting certain testimony from FBI Special Agent Richard Prince, the case agent in the investigation that led to this indictment. The government's motion comes in responding to a letter that Locust's counsel sent to the government pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) seeking the testimony of Special Agent Prince. (Doc. 130, the "*Touhy* letter.")

Having reviewed the parties' submissions, the Court has granted the government's motion to preclude Locust from eliciting this testimony from Prince.

## I. BACKGROUND

In essence, the government alleges that the defendants in this case participated in a conspiracy to defraud businesses and insurance companies by staging slip-and-fall accidents in New York City and then filing fraudulent personal injury lawsuits arising from those staged accidents. The defendants are charged with recruiting individuals to intentionally slip and fall, directing them to tell medical providers falsely that they had injured themselves, and bringing these individuals to attorneys who would commence personal injury lawsuits against the owners of the sites where the individuals claimed to have fallen and the insurance companies that had insured those premises.

The two other defendants charged in the original indictment, Peter Kalkanis and Kerry Gordon, pled guilty before trial began. Kalkanis, a former chiropractor, is alleged to have been the organizer and leader of the fraud scheme. (Doc. 2, Indictment ¶ 2.) According to the indictment, he paid his co-conspirators to recruit patients and transport them to their medical and legal appointments. *Id.*

## II. DISCUSSION

Locust's *Touhy* letter identifies three areas of examination that he wishes to pursue with Prince: "(1) The length of the investigation the FBI conducted in this case; (2) The law enforcement techniques that were used and not used during the investigation, including surveillance of individuals and recording devices used by confidential informants and/or cooperating witnesses; and (3) All contacts and communications with Robert Locust prior to his arrest." *Touhy* letter at 1. Locust indicates that he expects Prince's testimony to support the theory that Locust was merely a driver employed by Kalkanis between 2015 and 2018 and that Locust was not involved in the fraud charged in this case. *Id.* at 2. Specifically, Locust points to Prince's expected testimony that Locust was not the target of the multi-year investigation and that surveillance of Locust's home over the course of several weeks revealed only innocent behavior, including washing his car prior to picking up Kalkanis.[1] *Id.*

Locust also notes in the *Touhy* letter that he seeks to offer as evidence the surveillance logs created in the course of the investigation pursuant to Fed. R. Evid. 803(6), the business records exception to the rule against hearsay. *Id.* at 1 n.1.

### A. Evidence of Locust's Innocent Behavior Is Not Admissible.

Evidence that law enforcement officers observed only innocent behavior while conducting surveillance on Locust's home is not relevant to the charges against him.

The Second Circuit has held that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990); *United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978). "While non-criminal activities may be relevant where the defendant is alleged to have engaged in 'ceaseless' criminal conduct, 'a defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.'" *United States v. Nekritin*, 2011 U.S. Dist. LEXIS 64460 at *16-17 (E.D.N.Y. Jun. 17, 2011) (citing *Scarpa*, 913 F.2d at 1011).

---

[1] Locust's *Touhy* letter also states that "the nature of the exchange between SA Prince and Mr. Locust . . . provides a fuller picture of the actions that led up to his arrest." *Id.* This statement offers no insight into the content of that exchange or how a "fuller picture of the actions that led up to" Locust's arrest is relevant to his defense.

2

The facts of *United States v. Scarpa* are analogous to the facts in this case. In *Scarpa*, the government informed the defendants that it had created recordings of conversations between the defendants and other alleged co-conspirators during its investigation. *Scarpa*, 913 F.2d at 1010. Upon learning that the statements captured on tape "were either innocuous or relevant only to crimes not charged in the Indictment," the defendants moved for the production of the tapes pursuant to Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* The defendants theorized that the innocuousness of their statements showed that they were innocent of the charges brought against them. *Id.*

The district court rejected this argument and denied the motion, holding that "defendants cannot hope to use a process of elimination to defend themselves by presenting evidence of their noncriminal activities." *Id.* at 1010-11. The U.S. Court of Appeals for the Second Circuit affirmed, adding that "[t]he absence of [incriminating] conversations is consistent with testimony by the cooperating witnesses that [the charged crimes] were never discussed inside the Club," where the recording devices had been located. *Id.* at 1011.

Locust's desire to introduce evidence that the government's weeks-long surveillance of his home revealed only innocent acts falls directly within the prohibition in *Scarpa* and its progeny. The fact that law enforcement officers did not observe any criminal conduct during the period of surveillance has no bearing on whether Locust engaged in the fraud scheme charged in the indictment. The government has not alleged that Locust or his co-defendants engaged in "ceaseless" criminal conduct such that evidence of the absence of criminal acts would be relevant. *Nekritin*, 2011 U.S. Dist. LEXIS 64460, at *16-17.

Additionally, the bulk of the government's evidence against Locust has thus far centered around activity and conversations that allegedly took place in his car and at the offices of various medical and legal providers. As in *Scarpa*, the fact that law enforcement observed only innocent behavior while conducting surveillance at one particular location— in this case, Locust's home—does not rebut the government's evidence that the inculpatory activities and conversations took place somewhere else. Similarly, the fact that law enforcement agents observed Locust washing his car before picking up Kalkanis has no bearing on whether Locust participated in the fraudulent scheme charged in this case.

The Court therefore finds that evidence of what law enforcement agents did or did not observe while conducting surveillance on Locust's home is not relevant and therefore is not admissible pursuant to Fed. R. Evid. 401.

### B. Evidence of the Length of the Investigation, the Techniques Used During the Investigation, and Whether Locust Was a Target Is Not Admissible.

Evidence of the tactics that law enforcement agents used to investigate this case is also irrelevant.

3

The Second Circuit has repeatedly determined that "the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and . . . failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." *United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000); *United States v. D'Amelio*, 565 Fed. App'x 61, 63 (2d Cir. 2014); *United States v. Preldakaj*, 456 Fed. App'x 56, 60 (2d Cir. 2012); *see also United States v. Riley*, 2014 U.S. LEXIS 171648 at *7 (S.D.N.Y. Jul. 14, 2014).

The length of the investigation, the investigative techniques used, and the fact that Locust was not initially a target of the investigation are all irrelevant pursuant to this principle. Additionally, to the extent Locust seeks to highlight the fact that he was not a target of the investigation to suggest that the government's true targets were the doctors and lawyers allegedly involved in the conspiracy and to draw attention to their absence from this case, the Court has already ruled that such argument is improper. Trial tr. at 67-68; *see United States v. Farhane*, 634 F.3d 127, 166-67 (2d Cir. 2011) ("[A] selective prosecution defense alleges a defect in the institution of the prosecution, and as such is an issue for the court rather than the jury.") (internal quotations omitted).

While Locust may point to any asserted failure of proof in the record, any argument that the government has failed to carry its burden of proof because it conducted its investigation in a particular way is not relevant. *See United States v. Londono*, 175 Fed. App'x 370 (2d Cir. 2006) ("[A] defendant may comment on the failure of proof in the record, such as the absence of forensic evidence in the form of voice, handwriting, or fingerprint analysis.").

Evidence about the length of the investigation, the techniques used, and when Locust became a target is therefore not admissible pursuant to Fed. R. Evid. 401.

### C. Surveillance Logs from the Investigation Are Not Admissible.

Finally, the surveillance logs created in the course of the investigation in this case cannot be admitted pursuant to Fed. R. Evid. 803(6) because they contain statements made by law enforcement personnel.

The Second Circuit has "construed Rule 803(6) to exclude records in criminal cases containing observations made by police officers or other law enforcement personnel." *United States v. Feliz*, 467 F.3d 227 (2d Cir. 2006) (citing *United States v. Rosa*, 11 F.3d 315, 331-32 (2d Cir. 1993)). Additionally, Fed. R. Evid. 803(8), the "public records" exception to the rule against hearsay, explicitly exempts records that set out "matter[s] observed by law enforcement personnel." If these kinds of records could be admitted pursuant to Fed. R. Evid. 803(6), there would be no reason to explicitly exclude them from the public records exception to the rule against hearsay.

4

The surveillance logs, therefore, are excluded pursuant to Fed. R. Evid. 802 as inadmissible hearsay.

### III. CONCLUSION

For the reasons set forth above and on the record of the trial on May 16, 2019 (trial tr. at 1167-69), the government's May 13, 2019 motion has been granted.

Dated: New York, New York
May 21, 2019

_____
Sidney H. Stein, U.S.D.J.